UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES KYLE GOLDSMITH, The People of the Republic of the Republic State of South Dakota ex rel., relator for Charles Goldsmith;<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT DOOLEY, Warden at Mike Durfee State Prison;<br>JENNIFER STANWICK, Associate Warden at Mike Durfee State Prison;<br>SUE JACOB, Associate Warden at Mike Durfee State Prison; and<br>JOHN DOE, The New Staff Attorney at Mike Durfee State Prison,<br><br>Defendants. | ) | Civ. 11-4181-KES<br><br>ORDER DENYING MOTIONS, GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS, AND DISMISSING COMPLAINT |

Plaintiff, Charles Kyle Goldsmith, filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983. In his complaint, Goldsmith alleges that the defendants "acting in harmony" have deprived him of access to the courts in violation of his constitutional rights. Goldsmith is incarcerated at the Mike Durfee State Prison in Springfield, South Dakota. Goldsmith moves to recuse Chief Judge Karen Schreier from this case. Goldsmith also moves for leave to proceed in forma pauperis, seeks a permanent injunction regarding legal copies, and moves to amend his complaint to add two additional defendants, Diane Romkema and Tammy Doyle.

## DISCUSSION

### I. Motion for Recusal

Goldsmith moves to recuse Judge Schreier from hearing his case. Goldsmith asserts that Judge Schreier should recuse herself because she "has a longstanding relationship with the South Dakota Attorney General Marty Jackley and his family" and that relationship will cause Judge Schreier to "show prejudice to relator/plaintiff." Docket 5 at 1. Goldsmith also asserts that recusal is appropriate because of a purported conflict of interest arising from Attorney General Jackley's service as United States Attorney and resulting appearances in Judge Schreier's court. *Id.* at 2. Goldsmith's third allegation is that he "can obtain affidavits from well known drug dealers who can attest to the fact that certain members of the Jackley family (to be revealed in these Affidavits) have received special favors/protection from Judge Schreier in concert with Marty Jackley to overlook criminal wrong doing (drug deals)." *Id.* Goldsmith did not submit any affidavits or allege any specific facts in support of his allegations of bias.

28 U.S.C. § 455(a) requires a judge to recuse herself in "any proceeding in which [her] impartiality might reasonably be questioned." If the facts Goldsmith alleges were true, that would certainly be the case. But "[a] judge is not required to withdraw from hearing a case upon a mere suggestion that the judge is disqualified to sit, and it is improper for the judge to do so unless the

alleged cause of recusation is known by the judge to exist or is **shown by proof to be true in fact.**" 48A C.J.S. Judges § 316 (emphasis added). Goldsmith's wild, untrue, and unsupported accusations that Judge Schreier conspired to help members of the Jackley family avoid prosecution are insufficient to disqualify Judge Schreier.

Section 455(b) also requires a judge to recuse herself where "[s]he has a personal bias or prejudice concerning a party[.]" Goldsmith asserts that Judge Schreier's relationship with Attorney General Jackley would cause her to be biased against Goldsmith. While the South Dakota Attorney General's office does represent Mike Durfee State Prison in some cases, Judge Schreier has no personal relationship with Attorney General Jackley that would cause her to be biased against Goldsmith. Most importantly though, Attorney General Jackley is not a party to this case. "A showing of bias against a party as opposed to counsel . . . is required under section 455." *Souder v. Owens-Corning Fiberglas Corp.*, 939 F.2d 647, 653 (8th Cir. 1991). While bias for or against an attorney can be imputed to a party in certain cases, the present case is not one of them. *Id.* at n.6 (explaining that bias may be imputed if it is shown that the attorney and party share a certain characteristic, such as race, that is the source of bias and noting that courts require proof that the alleged bias against the attorney also caused bias to the party). Accordingly, Goldsmith's motion to recuse Judge Schreier is denied.

**II. In Forma Pauperis Motion**

The Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915, requires prisoners to make an initial partial filing payment where possible, even if in forma pauperis status is sought. "When an inmate seeks in forma pauperis status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (internal citations omitted). Determination of the partial filing fee is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Goldsmith has indicated that his average monthly deposits equal $44.97 and his average monthly balance is $15.60. Thus, Goldsmith must make an initial partial payment of $8.99 which is 20 percent of $44.97. Accordingly, Goldsmith is granted in forma pauperis status.

But the inquiry does not end there. The PLRA also requires this court to "screen" Goldsmith's complaint to determine whether it should be dismissed. Section 1915 provides an action must be dismissed if the court determines the claim "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg by Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir. 1995). Also, "although liberally construed, a pro se complaint must contain specific facts supporting its conclusions." *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (citations omitted). A plaintiff's complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 1965; *Abdullah v. Minnesota*, 261 Fed. App'x 926, 927 (8th Cir. 2008) (citing *Twombly* and noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory).

It has long been recognized that "civil rights pleadings should be construed liberally." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). The complaint, however, must at the very least contain facts that state a claim as a matter of law and must not be conclusory. *Id.* Broad and conclusory statements unsupported by factual allegations are not sufficient.

*Ellingburg v. King*, 490 F.2d 1270 (8th Cir. 1974). Finally, although pro se complaints are to be construed liberally, "they must still allege facts sufficient to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The court is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. *Id.* To state a claim for relief under § 1983, a plaintiff must allege sufficient facts to show (1) that the defendants acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (internal citations omitted).

Goldsmith alleges that defendants "intentionally restricted his access to use of the Prison Law Library" and that this restriction has "caused Plaintiff difficulty in doing research and preparation of his writs of habeas corpus, motions, and appeals." Docket 1 at ¶ 3. Goldsmith asserts that the defendants moved the law library from the Lawrence Library to the Science Hall and that library hours are scheduled during his GED class and his working hours. *Id.*

Inmates have a constitutional right of meaningful access to the courts and the legal system. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "Meaningful access to the courts is the capability to bring 'actions seeking new trials, release from confinement, or vindication of fundamental civil rights.' " *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (quoting *Bounds v. Smith*, 430 U.S.

817, 827 (1977)). In order to prevail on an access to the courts claim, an inmate must demonstrate that he sustained an "actual injury" as a result of the challenged policy. *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001). "To prove actual injury, a prisoner must demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008). Merely alleging that the law library is inadequate is insufficient to establish actual injury. As the Supreme Court explains:

> Because [precedent] did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his law library or legal assistance program is subpar in some theoretical sense. . . [T]he inmate must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered actionable harm that he wished to bring before the courts, but was so stymied by the inadequacies of the law library that he was unable to even file a complaint.

*Lewis*, 518 U.S. at 351. Goldsmith has not made the requisite showing of injury. He alleges that it is difficult to do legal research and prepare motions, writs, and appeals under the library system at Mike Durfee State Prison. But Goldsmith has not demonstrated that a nonfrivolous legal claim has been frustrated or is being impeded. It does not appear that Goldsmith was hindered in filing the present motions. Accordingly, Goldsmith has failed to state a claim

upon which relief may be granted and his complaint is dismissed pursuant to 28 U.S.C. § 1915.

**III. Permanent Injunction and Motion to Amend Complaint.**

Goldsmith also moves for a permanent injunction and for leave to amend his complaint. These motions stem from the same incident. Goldsmith requested that prison employees "make copies of his 'Affidavit of Citizenship, Domicile, and Tax Status' that he needed to serve upon this Honorable Court and the Defendants. [They] refused to make these Legal copies for the Plaintiff as she made a Legal determination that it was not a legal document." Docket 10, Motion for Permanent Injunction. Goldsmith also asserts that there is no indication that any of the prison employees mentioned "hold[] a bar license which is required of any 'person' within the corporate state of South Dakota, prior to practicing Law, and making Legal Determinations as a Corp. Officer of said Corporation." *Id.* at 2. Goldsmith asserts that these actions have "intentionally and willfully depriv[ed] Plaintiff of exercising his Right to have free and unrestricted access to the Court." *Id.* Goldsmith's amended complaint attempts to assert a similar access to the courts claim against several prison employees. Docket 11, Motion to Add Defendants to Lawsuit.

But as discussed above, Goldsmith has failed to show that he has suffered any actual prejudice to a nonfrivolous legal claim. Thus, he lacks standing to bring an access to the courts claim. *See Lewis*, 518 U.S. at 349.

*See also Klinger v. Dep't of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997) ("In *Lewis v. Casey,* the Supreme Court held, based on principles of standing, that actual injury must be proven in order to prevail on an access-to-courts claim). An inmate is required to identify a specific injury from the alleged lost opportunity to litigate; speculative injuries- i.e. injures that might occur, or could have occurred- are not sufficient. *See Hartsfield*, 511 F.3d at 833. Because Goldsmith's proposed amended complaint fails to state a claim upon which relief may be granted, it is denied. Goldsmith's motion for a permanent injunction is similarly deficient. Thus, it is denied and Goldsmith's case is dismissed pursuant to 28 U.S.C. § 1915. Therefore, it is

ORDERED that Goldsmith's motion to recuse Judge Schreier (Docket 6) is denied.

IT IS FURTHER ORDERED that Goldsmith's motion for a permanent injunction (Docket 10) and motion to amend his complaint (Docket 11) are denied.

IT IS FURTHER ORDERED that Goldsmith's motion to proceed in forma pauperis (Docket 9) is granted. **Goldsmith will make an initial partial filing fee of $8.99 before February 17, 2012,** made payable to the Clerk, U.S. District Court.

IT IS FURTHER ORDERED that Goldsmith's complaint is dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915.

IT IS FURTHER ORDERED that the institution having custody of the plaintiff is directed that whenever the amount in plaintiff's trust account exceeds $10, monthly payments that equal 20 percent of the funds credited to the account the preceding month will be forwarded to the United States District Court Clerk's office pursuant to 28 U.S.C. § 1915(b)(2), until the filing fee of $350 is paid in full.

Dated January 20, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE